J-S94017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ISIAH JESSE GARRETT, | |
| Appellant | No. 155 MDA 2016 |

Appeal from the PCRA Order entered December 18, 2015
in the Court of Common Pleas of Luzerne County,
Criminal Division, at No(s): CP-40-CR-0000760-2011.

BEFORE:  LAZARUS, RANSOM, and FITZGERALD,* JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED APRIL 18, 2017**

Appellant, Isiah Jesse Garrett appeals from the December 18, 2015 order denying his motion for funds to hire a ballistics expert, as well as his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The pertinent facts and procedural history, as gleaned from our review of the certified record, are as follows.  Police charged Appellant, his brother, Izel Garrett ("Izel"), and their cousin Tyrek Smith ("Smith"), with multiple crimes, including criminal homicide and conspiracy to rob Abdul Shabazz ("the victim"), during a drug transaction in Hazelton, Pennsylvania on December 6, 2011.  Although the three men gave various accounts of how the transaction occurred, the victim was shot twice during the exchange and ran out of the apartment.  He was able to call 911 for assistance, was still

_____
* Former Justice specially assigned to the Superior Court.

alive when help arrived, but subsequently was pronounced dead at a nearby hospital.

After an evidentiary hearing, the trial court denied Appellant's pretrial motion to suppress statements he made to police following his arrest. Smith pled guilty to the robbery charge and testified for the Commonwealth at the joint trial of Appellant and Izel that was held over three days in December 2011. When questioned, Smith gave multiple versions of what occurred to the police, at first claiming nothing happened, then identifying Izel's girlfriend, who was also present in the apartment, as the shooter, and finally identifying Izel as the shooter. At trial, Smith testified in more detail concerning the drug transaction and the position of the parties prior to the shooting. He testified that Izel gave the victim counterfeit money and the victim began to look closely at the money. According to Smith, Izel then pulled out a silver revolver, pointed it at the victim while ordering him to the floor, and then shot the victim once in the abdomen and once in the left arm. Smith testified that he was seated in a chair directly across from the victim when he appeared at the door of the apartment, while both Appellant and Izel were standing up and to the left of the victim.

Dr. Gary W. Ross, a forensic pathologist who conducted the victim's autopsy, testified that the shot to the victim's arm was only a graze wound, but that the shot to the "left upper abdomen" was lethal. N.T., 12/14/11, at 343. He testified that that bullet "entered the abdomen on the [victim's] left side, went through the spleen, the large bowel, the small bowel, the

stomach, the pancreas, the liver, through the diaphragm and they [sic] the bullet in the right chest muscular wall." *Id.* at 340. As to the bullet's trajectory, Dr. Ross testified that it traveled "from left to right, front to back, ans slightly upward." N.T., 12/14/11, at 349.

At trial, there were two firearms introduced as evidence—a silver Taurus .38 revolver and a black .38 revolver. Smith testified that Appellant shot the victim with the silver revolver. In their statements to police both Appellant and Izel told police that Smith shot the victim using the black revolver. Following a search of their mother's apartment, the loaded black revolver was found in Izel's bedroom, while the silver revolver was found in Appellant's bedroom. In addition, police found two spent shell casings from the silver revolver on a dresser or table in Izel's bedroom. Expert testimony at trial established that the silver revolver was the murder weapon, and that the two shell casings came from the silver revolver.

Ultimately, the jury found both Appellant and Izel guilty of second-degree murder, conspiracy to commit second-degree murder, and a firearm violation. Appellant was sentenced to life imprisonment for the murder conviction. He filed a timely appeal to this Court. In an unpublished memorandum filed on July 15, 2013, we rejected Appellant's challenge to the denial of his suppression motion, found his sufficiency waived, and therefore affirmed his judgment of sentence. ***Commonwealth v. Garrett***, No. 649 MDA 2012.

Appellant filed a timely *pro se* PCRA petition in which he claimed trial counsel was ineffective for failing to obtain an independent ballistics expert. The PCRA court appointed counsel, and PCRA counsel joined in Izel's motion to provide funds to hire a ballistic expert. Within this motion, Izel's PCRA counsel averred that, she had contacted Fred Wentling, a ballistics and firearm examiner in Lancaster, Pennsylvania, who was willing to examine the evidence and offer an expert opinion as to who fired the fatal shots, if such funds were granted. On August 13, 2015, the PCRA court held an evidentiary hearing to resolve both matters. Appellant and Izel both testified, as did their respective trial counsel. At the conclusion of the hearing, the PCRA court took the matter under advisement, and requested that the parties file briefs. By order entered December 18, 2015, the PCRA court denied both PCRA petitions and the joint motion for funds. Appellant filed this timely appeal.[1] Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

    A. Whether trial counsel was ineffective in failing to request a ballistics expert to examine the guns, the victim's clothing, autopsy report and photograph[s], casings and bullet hole in the wall to determine where the shooter was located at the time of the two gunshots?

---

[1] Izel also filed a timely appeal found at No. 154 MDA 2016.

B. Whether the PCRA court abused its discretion in denying [Appellant's] motion to provide funding for a ballistics expert?

Appellant's Brief at 4 (excess capitalization removed).

This Court has recently reiterated:

On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error. Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level. The PCRA court's credibility determinations, when supported by the record, are binding on this Court. However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Medina*, 92 A.3d 1210, 1214-15 (Pa. Super. 2014) (citations omitted).

Because Appellant's claim challenges the stewardship of prior counsel, we apply the following principles. The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. *Id.* To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonably probability that the outcome of the challenged proceedings would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the

test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. *Commonwealth v. Douglas*, 645 A.2d 226, 231 (Pa. 1994). Even if counsel had no reasonable basis for the course of conduct pursued, however, an appellant is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. *Douglas*, 645 A.2d at 232.

Appellant claims that trial counsel was ineffective for failing to have an independent ballistics expert testify at trial. According to Appellant:

> There was no dispute as to the location of Smith at the moment of the shooting. He was sitting in a chair in front of the door. [Appellant and Izel] were standing. Dr. Ross, the forensic pathologist, testified that the path of the bullet was from entry into the lower abdomen by going upward through the gastrointestinal system. This implied the shooter may have been sitting.
>
> [Appellant] contends that the testimony of a ballistics expert, who based upon his knowledge of bullets, weapons, and trajectory could have identified the location of the shooter is imperative to his case. If a ballistics expert could state dispositively [sic] that the bullet was fired from Smith's sitting position, this would have demonstrated to [the] jury that [Smith] he was lying about [Appellant] and [Izel's] role in the shooting.

- 6 -

Trial Counsel admitted that his strategy was to impeach Smith. This scientific evidence was the best possible impeachment evidence, and clearly was more than cumulative. There could have been no reasonable trial strategy that did not include using a ballistics expert to impeach Smith.

[Izel's] [PCRA] counsel spoke to a ballistics expert, Frederick Wentling, who stated that he believed he could determine the location of the shooter from the available evidence.

Appellant's Brief at 20-21.

The standards that we apply when reviewing a claim regarding the failure to call an expert at trial is well settled:

In order to demonstrate counsel's ineffectiveness for failing to call a witness, a petitioner must prove that "the witness[] existed, the witness [was] ready and willing to testify and the absence of the witness['] testimony prejudiced petitioner and denied him a fair trial." [*Commonwealth v. Johnson*, 27 A.3d 244, 247 (Pa. Super. 2011)] (internal citation omitted). In particular, when challenging trial counsel's failure to produce expert testimony, "the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence. *Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 745 (2004) (internal citation omitted). Also, [t]rial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross examine prosecution witnesses and elicit helpful testimony." *Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 253 (1998); *accord Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1265 (1994). Finally, "trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony which was presented by the prosecution. *Copenhefer*, 719 A.2d at 253, n.12.

*Commonwealth v. Luster*, 71 A.3d 1029, 1047 (Pa. Super. 2013) (*en banc*).

After hearing the testimony at the evidentiary hearing, the PCRA court concluded that Appellant failed to establish his ineffectiveness claim. The PCRA court summarized the relevant testimony as follows:

> [Trial counsel] testified [] and also indicated that [Smith] gave conflicting statements and made a deal with the Commonwealth to get out of prosecution for homicide. He indicated that with the totality of the testimony of the case there were two (2) guns in the residence where [Appellant and Izel] were and one of them was [the] homicide weapon. The evidence also showed that the shells [found in Izel's bedroom] matched the [bullet] found at the scene. More incriminating was the revolver found in the room used by one (1) or both [Appellant and Izel]. [Trial counsel] was clear: He did not see how a ballistics expert would have helped the case at all.
>
> The defense of the case was that [Smith] was a liar and that he made a good deal for himself. Finally, [trial counsel] said he did not believe an expert could positively say that "that bullet" was fired from "the position sitting down", "standing up", or "whatever." That is because bullets have a tendency of doing all kinds of crazy things. He just did not see the necessity for it. [N.T, 8 /13/15, at 29]. His recollection was that there was a lot of movement in the room at the time of the shooting, there was a lot of chaos and confusion, so he firmly believed that a ballistics expert would not have swayed the jury [from] finding either [Izel or Appellant] guilty.
>
> [Appellant] also testified that the main strategy was to discredit [Smith]. That was based on the various versions of [Smith's] statement of who [killed the victim]. [Appellant] did not review any discovery because none was provided to him. He believes if [an] expert was hired he would have been able to prove the [trajectory] of the bullet that it was fired from a seated position which would prove that [Smith] was the shooter.

PCRA Court's Opinion, 3/21/16, at 3-4.

The PCRA court then reasoned:

> [T]he evidence showed that the victim was killed by a bullet. During the trial [Smith] testified as to his position which is exactly what [Appellant says] he was in when the victim was shot. Because his positioning [was] not disputed, it follows that that the jury apparently believed that he was not the shooter and deemed him credible.
>
> At trial, the testimony of Dr. Ross, the forensic pathologist, regarding the trajectory of the victim's wounds [sic] was that the fatal bullet traveled "from left to right, front to back, and slightly upwards." [N.T., / / , at 349]. As the Commonwealth argued, to make the determination of who was the actual shooter rather than the path of the bullet, an expert would have to rely on some witness's description of the scene. The ballistic[s] expert would have done nothing to change the outcome of the case.

PCRA Court's Opinion, 3/21/16, at 4-5.

Our review of the record supports the PCRA court's determination. Initially, as noted by the PCRA court, it was undisputed at trial that Smith was seated across from the victim when he appeared at the apartment door. Although it was also undisputed at trial that bullet traveled at a "slightly upward," the expert first testified that the trajectory of bullet was "left to right." In closing to the jury, the prosecutor argued that if the bullet was fired from directly across where Smith was sitting, the bullet, would not have gone "from [the victim's] left to right, slightly upward[.] It's going to go front to back." N.T., 12/15/11, at 568.

- 9 -

Moreover, even assuming that Appellant's proposed expert would be able to testify as to the exact location of the shooter, the PCRA court found that Appellant did not suffer prejudice, given the totality of the evidence. Once Appellant's suppression motion was denied, his statements made to police were admitted at trial. According to Appellant, Smith fired the black revolver, rather the murder weapon. In addition, the police found both revolvers at Appellant's residence, and the two spent shell casings from the murder weapon were found in Izel's bedroom. Given the totality of this evidence, Appellant failed to establish that the outcome of his trial would have been different had a ballistics expert testified about the location from which the victim was shot. Any such expert testimony could not refute the fact that the murder weapon and the spent shell casings were found in Appellant's residence. As noted above, trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Loner*, *supra*.

Given this conclusion, Appellant's remaining claim that the PCRA court abused its discretion in failing to grant funds to hire a ballistics expert likewise fails. *See*, *e.g.*, *Commonwealth v. Reid*, 99 A.3d 470, 506 (Pa. 2014) (concluding that the PCRA court did not abuse its discretion in denying funds to retain a ballistics expert). In sum, because the PCRA court correctly determined that Appellant failed to establish his ineffectiveness of counsel claim, we affirm its order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/2017