J. S62034/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONALD STEWART, | : | No. 2383 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, June 12, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0403521-2003

BEFORE:  LAZARUS, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED FEBRUARY 14, 2019**

Donald Stewart appeals from the June 12, 2017 order filed in the Court of Common Pleas of Philadelphia County that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The facts, as set forth by a previous panel of this court, are as follows:

> On January 13, 2003, Kynisha Barnes, 18 (hereinafter "Barnes"), was walking along Baynton Street in the City and County of Philadelphia, where she came in contact with [appellant].  With his daughter in the back seat asleep, [appellant] pulled up in a black Jaguar alongside Barnes and struck up a conversation.  [Appellant] told Barnes that he owned a salon with his mother on the other side of Germantown and that he needed someone to work for him as a cashier.  Barnes told [appellant] that she

was interested since she was not employed at the time. [Appellant] opened the car door, and Barnes got in so that he could drive her to the salon to fill out an application.

[Appellant] first drove to an unidentified location in Germantown and dropped off his daughter while Barnes waited in his car. [Appellant] returned and drove for about thirty (30) minutes to his residence located at 2056 North 23rd Street in the City and County of Philadelphia. [Appellant] told Barnes to get out of the car and they walked up to his house. Once inside, [appellant] told Barnes to relax and get comfortable, but she remained standing. [Appellant] removed her coat and told her to wait on his couch while he went upstairs. When [appellant] returned, Barnes asked to be taken home. [Appellant] replied, "No, I want to take care of you." Barnes grabbed her coat, but [appellant] led her upstairs by the arm. Barnes repeatedly told [appellant] that she did not want to go upstairs, to which he replied, "Yes you do."

[Appellant] sat Barnes on his bed, turned the television and radio on high volume, and left the room. When [appellant] returned, Barnes asked if she could use his bathroom where she stayed for a short time contemplating what to do. As she stood in the bathroom, [appellant] opened the door wearing only his underwear. He pulled Barnes back into the bedroom, reached under her shirt and removed her bra. As Barnes tried to push him away, [appellant] said, "I am going to give you money for it." Barnes repeatedly told [appellant] to stop. Barnes tried to run out of the room, but

[appellant] grabbed her by the waist and forced her down on the bed. He told her that if she did not remove her pants, he would rip them off her. [Appellant] removed his underwear and forced his penis into her vagina. Barnes repeatedly told [appellant] to stop. After he finished, Barnes went into the bathroom to clean herself. Afterwards, [appellant] attempted to give her money. Barnes refused. [Appellant] put the money in her [,] which Barnes did not discover until later. Barnes asked [appellant] to drive her back to the location where they met. Once he stopped the car, [appellant] handed her a piece of paper with a telephone number with the name "Jamal" written on it. Afterwards, Barnes told both her friend Byron Chamberlain, and her sister about the incident with [appellant].

The next day, Barnes told the school nurse about the incident and police were called to the school. Barnes gave a statement to police. Barnes said [appellant] had a noticeable scar on his stomach. On January 15, 2003, Barnes gave a statement to the Special Victim's Unit. Police went to [appellant's] home, but he denied any involvement with Barnes. On March 3, 2003, Barnes picked [appellant] out of a photo array. Barnes said [appellant's] name was Jamal. [Appellant] was arrested on March 9, 2003.

Trial Court Opinion, 11/20/07, at 2-4 (citations omitted).

After a jury trial, [appellant] was found guilty of [rape and sexual assault].[1] Counsel for [appellant]

---

[1] 18 Pa.C.S.A. §§ 3121(a) and 3124.1, respectively.

> filed post-verdict Motions. Subsequently, new counsel entered an appearance for [appellant] and filed additional post-trial Motions. The trial court denied [appellant's] post-trial Motions, and sentenced [appellant] to a prison term of ten to twenty years on the rape conviction.[Footnote 2]
>
>> [Footnote 2] The conviction of sexual assault merged with the rape conviction for purposes of sentencing.

*Commonwealth v. Stewart*, 970 A.2d 479 (Pa.Super. 2009) (unpublished memorandum at 1-3).

Appellant then appealed to this court, which affirmed. *Id.* Appellant petitioned for allowance of appeal with the Pennsylvania Supreme Court. Our supreme court vacated the portion of this court's opinion related to prosecutorial misconduct and remanded to this court with instructions to remand to the trial court to address whether the assistant district attorney committed prosecutorial misconduct. *Commonwealth v. Stewart*, 987 A.2d 1214 (Pa. 2010). The trial court concluded that there was no prosecutorial misconduct. This court affirmed. *Commonwealth v. Stewart*, 23 A.3d 577 (Pa.Super. 2010). Appellant then petitioned for allowance of appeal our supreme court, which denied the petition on May 12, 2011. *Commonwealth v. Stewart*, 21 A.3d 1193 (Pa.Super. 2011).

The PCRA court recounted the following additional procedural history:

> On May 8, 2012, [a]ppellant filed a *pro se* PCRA Petition. On January 21, 2014, court-appointed counsel filed an Amended PCRA Petition. On April 1, 2014, [a]ppellant filed a motion to remove counsel. On June 26, 2014, John Cotter, Esq. entered his

appearance on behalf of [a]ppellant. On August 1, 2014, counsel filed an Amended PCRA Petition. On October 7, 2014, [a]ppellant filed a motion for new counsel. On October 27, 2014 and November 17, 2014, counsel filed PCRA supplements. On July 6, 2015, counsel filed a motion to withdraw as counsel, citing [a]ppellant's wishes to proceed *pro se*. On August 21, 2015, this Court held a *Grazier*[2] hearing and permitted [a]ppellant to proceed *pro se*. On December 11, 2015, this Court appointed Matthew J. Wolfe, Esq. as standby counsel. On March 18, 2016, [a]ppellant filed an Amended PCRA Petition. On March 22, 2016, the Commonwealth filed a Motion to Dismiss [a]ppellant's PCRA Petition. On May 12, 2016, [a]ppellant filed yet another PCRA Petition. On July 18, 2016, [a]ppellant filed a Motion for Extension of Time. On July 25, 2016, the Commonwealth filed a response. On May 11, 2017, [a]ppellant filed another Motion for Extension of Time. On May 12, 2017, [a]ppellant filed yet another PCRA Petition. On June 7, 2017, the Commonwealth filed a brief in opposition to [a]ppellant's motion for extension of time. Following arguments presented by both sides, on June 12, 2017, this Court dismissed [a]ppellant's PCRA Petition.

On July 7, 2017, [a]ppellant filed[] a notice of appeal. On September 29, 2017, [a]ppellant filed with the court a Statement of Errors Complained [of] on Appeal, pursuant to this Court's order. This Court cannot identify, precisely, [a]ppellant's claims raised on appeal. (*See* Attached Statement of Errors).

PCRA court opinion, 3/6/18 at 1-2.

The PCRA court filed an opinion, pursuant to Pa.R.A.P. 1925(a) on March 6, 2018.

---

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

Appellant raises the following issue for this court's review: "Did the PCRA Court err and/or abuse its discretion when it denied [appellant's] petition under the PCRA seeking a new trial based upon the ineffective assistance of counsel?" (Appellant's brief at 4.)

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted).

Appellant's claims concern the ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that

his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks omitted; some brackets in original), citing 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), *appeal denied*, 30 A.3d 487 (Pa. 2011). Additionally, counsel is not ineffective for failing to raise a claim that is devoid of merit. *Commonwealth v. Ligons*, 971 A.2d 1125, 1146 (Pa. 2009).

Initially, appellant contends that his trial counsel was ineffective for failing to consult or present evidence from any experts in forensic science, DNA, or any related field to discuss the significance of the lack of physical and forensic evidence presented.

> In order to demonstrate counsel's ineffectiveness for failure to call a witness, a petitioner must prove that "the witness [] existed, the witness [was] ready and willing to testify, and the absence of the witness['] testimony prejudiced petitioner and denied him a fair trial." [*Commonwealth v.*] *Johnson*, 27 A.3d [244], 247 (Pa.Super. 2011). In particular, when challenging trial counsel's failure to produce expert testimony, "the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence."

> ***Commonwealth v. Bryant***, 579 Pa. 119, 855 A.2d
> 726, 745 (2004) (internal citation omitted). Also,
> "[t]rial counsel need not introduce expert testimony
> on his client's behalf if he is able effectively to
> cross-examine prosecution witnesses and elicit
> helpful testimony." ***Commonwealth v.***
> ***Copenhefer***, 553 Pa. 285, 719 A.2d 242, 253
> (1998); ***accord Commonwealth v. Williams***, 537
> Pa. 1, 640 A.2d 1251, 1265 (1994).

***Commonwealth v. Luster***, 71 A.3d 1029, 1047 (Pa.Super. 2013).

Here, appellant failed to identify what expert was available and willing to testify. Also, the record reflects that there was no DNA evidence available. Because the Commonwealth did not present any DNA evidence or expert testimony, the jury would have been aware that there was no DNA evidence that linked appellant to the rape. The Commonwealth also notes that appellant's trial counsel argued in his closing argument about the absence of DNA evidence. Appellant fails to establish how he suffered prejudice from the failure to call the witness, so his claim fails under ***Charleston***.

Appellant next contends that his trial counsel was ineffective because he failed to object to a portion of a jury instruction concerning reasonable doubt which appellant believes is constitutionally infirm. Appellant concedes that while he raised this claim in his statement of errors complained of on appeal, he did not raise it before the PCRA court dismissed his petition(s). This issue is waived because a claim not raised in a PCRA petition cannot be

raised for the first time on appeal. ***Commonwealth v. Santiago***, 855 A.2d 682, 691 (Pa. 2004).

Appellant has failed to prove that the PCRA court's decision contained legal error or that any findings were unsupported by the evidence of record.

Order affirmed.


Lazarus, J. joins this Memorandum.

McLaughlin, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/19