**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Leslie L. BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted May 28, 2013.

Filed July 17, 2013.

Scott Coffey, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:

Leslie L. Brown ("Brown") appeals from the judgment of sentence entered on May 23, 2011, by the Court of Common Pleas, Allegheny County. Upon review, we vacate and remand for resentencing in accordance with *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and *Commonwealth v. Knox,* 50 A.3d 749 (Pa.Super.2012), *appeal granted on other grounds,* —— Pa. ——, 68 A.3d 323 (2013). In so ruling, we apply the well-established principle that a claim that a sentence violates an individual's right to be free from cruel and unusual punishment is a nonwaivable challenge to the legality of the sentence. *See Commonwealth v. Howard,* 373 Pa.Super. 246, 540 A.2d 960, 961 (1988); *Commonwealth v. Yasipour,* 957 A.2d 734, 740 n. 3 (Pa.Super.2008), *appeal denied,* 602 Pa. 658, 980 A.2d 111 (2009).

At approximately 12:00 a.m. on the morning of September 29, 2006, 16-year-old Brown was in the Swissvale neighborhood of Allegheny County with friends Lamar Meggison ("Meggison"), Keith Smith ("Smith"), and Daniel Holmes. As the group proceeded to a local convenience store, Brown approached Michael Stepien ("Stepien" or "the victim"), who was walking in a nearby alley, and demanded money, holding a gun to Stepien's head. Stepien told Brown he had no money. Brown fired two warning shots—one in the air and one into the ground—and demanded money a second time. When Stepien again told him he did not have any money, Brown shot him in the head. Brown and his friends, who were still in the area, ran to the home of Terico Ross, another friend who lived in the neighborhood. While there, in the presence of his friends, Brown said that he killed someone.

Paramedics responded to a call of a man lying in the alley between Nied's Funeral Home and the volunteer fire department and transported the victim to the hospital. Stepien was pronounced dead from the gunshot wound to his head at approximately 3:00 a.m. on September 29, 2006. Medical personnel removed a badly damaged .22 caliber bullet from Stepien's head.

On October 6, 2006, at a bus stop in Swissvale several blocks from where the murder occurred, Brown approached Francis Yesco ("Yesco") from behind, put a gun to his head, told him not to move, and reached into Yesco's pants pocket. Yesco brushed Brown's hand away and turned to strike Brown, at which Brown fled, still holding the gun. Yesco and Swissvale Police Officer Justin Keenan, who was patrolling in the area and observed what happened, chased Brown for approximately half a block, during which Brown discarded the firearm over a fence. Officer Keenan ultimately caught Brown and arrested him, and recovered the gun shortly thereafter.

A ballistics expert for the Commonwealth test-fired Brown's gun, a .22 caliber revolver, and compared the test bullet with the bullet removed from the victim. The bullet recovered from Stepien's head was so badly damaged it could not be matched, but because it shared certain similarities with the test bullet, Brown's gun could not be excluded as the murder weapon.

The police had no further evidence linking Brown to Stepien's murder until 2008, when they arrested Carl Smith, Smith's brother, who told police that Smith was present at the time Brown shot Stepien. This led police to interview other witnesses, who also implicated Brown in Stepien's murder. A grand jury was subsequently convened, and ultimately Brown was arrested.

The Commonwealth charged Brown by information with criminal homicide, robbery, carrying a firearm without a license, and possession of a firearm by a minor.[1] Following a three-day trial, a jury convicted Brown of second-degree murder,[2] robbery, carrying a firearm without a license, and possession of a firearm by a minor. On May 23, 2011, the trial court sentenced Brown to a mandatory term of life in prison without the possibility of parole for second-degree murder and to a consecutive term of three to six years of imprisonment for carrying a firearm without a license. The court imposed no further penalty on the remaining convictions.

Following sentencing, the trial court granted trial counsel's motion to withdraw. The trial court did not appoint new counsel until July 14, 2011. On September 30, 2011, Brown filed a counseled petition pursuant to the Post Conviction Relief Act seeking reinstatement of his post-sentence rights. The trial court granted his request on December 1, 2011, ordering the filing of post-sentence motions *nunc pro tunc* within 10 days of its order. Brown complied on December 7, 2011, raising a challenge to the weight of the evidence and two claims of trial court error. On January 20, 2012, the trial court granted Brown permission to file amended post-sentence motions, which Brown did on March 30, 2012, raising an additional claim of trial court error. On May 16, 2012, Brown's post-sentence motions were denied by operation of law.

Brown filed a timely notice of appeal, and complied with the trial court's request for a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). He then filed a supplemental 1925(b) statement, raising for the first time a claim that his mandatory sentence of life in prison without the possibility of parole is unconstitutional. The trial court issued a written opinion pursuant to Pa. R.A.P. 1925(a), addressing all of the issues raised by Brown.

On appeal, he raises three issues for our review, which we have reordered for ease of disposition:

1. Did the trial court err in denying [Brown]'s post[-]sentencing motions since [Brown]'s convictions of second[-]degree murder, robbery-[serious bodily injury], firearms not to be carried without a license and possession of a firearm by a minor were against the weight of the evidence?

2. Did the trial court err in denying [Brown]'s post[-]sentencing motions since the trial court erred in permitting the prosecutor to introduce into evidence, via expert testimony, the gun used in the 10/6/06 robbery since there was no connection established between that gun and the gun and bullet used in the instant 9/28/06 homicide/robbery?

3. Did the trial court err in denying [Brown]'s request for re-sentencing since [Brown]'s sentence of life imprisonment without the possibility of parole for then sixteen[-]year[-]old [Brown] since, pursuant to *Miller v. Alabama* [ ], the Eighth Amendment to the United States Constitution forbids such a sentence, [Brown] has timely raised this claim and *Miller* is to be retroactively applied? [3]

Brown's Brief at 3.

As his first issue on appeal, Brown asserts that his convictions were against the

---

1. 18 Pa.C.S.A. §§ 2501(a), 3701(a)(1), 6106, 6110.1(a).

2. 18 Pa.C.S.A. § 2502(b).

3. The issue as stated suggests that Brown requested resentencing and that the trial court denied this request. We have thoroughly reviewed the certified record and have

weight of the evidence presented. *Id.* at 20. Specifically, he argues that Smith and Meggison, the only witnesses linking him to the crimes, were so incredible, the trial court abused its discretion by not granting him a new trial. *Id.* at 21–24. The trial court found that the evidence of record supported the guilty verdicts, and because they do not "shock one's sense of justice," it did not abuse its discretion by denying Brown's post-sentence motion requesting a new trial on this basis. Trial Court Opinion, 1/18/13, at 10.

We review a weight of the evidence claim according to the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the

facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Karns,* 50 A.3d 158, 165 (Pa.Super.2012) (citation omitted).

■ As noted above, the record reflects that Smith and Meggison were the only eyewitnesses who testified, and both testified that they saw Brown shoot Stepien in the head. N.T., 2/23/11, at 133, 191. However, neither witness came forward and reported the murder to police willingly. The record reflects that Meggison first spoke to police and implicated Brown when he was arrested in connection with Stepien's murder in December of 2008, two years after the murder. *Id.* at 195, 208. In May of 2008, one year and eight months after the murder, Smith went to the police station to pick up his brother's clothes after his brother was arrested. *Id.* at 141–42. While there, police asked him about the murder, and Smith initially told the police he did not know anything about it. *Id.* at 144. He then admitted to knowing about the killing, and knowing that Brown shot Stepien, but denied that he was present when it occurred. *Id.* at 147. It was not until he testified before the grand jury that Smith told "the full story," and he did so then only in response to police telling him that they could charge him with perjury if he lied under oath. *Id.* at 148–49. Smith subsequently left Pennsylvania, and police arrested him on a material witness warrant to ensure he would testify at trial. *Id.* at 149, 178.

found no request for resentencing or an order by the trial court denying the same. Indeed, in his amended 1925(b) statement, Brown admits that the claim was not raised in his post-sentence motions because *Miller* was not decided until June 25, 2012. Amended 1925(b) Statement, 8/3/12, at 2. Furthermore, throughout his argument on this issue, Brown is inexplicably referred to as "Hancock." *Id.* at 14–20. The argument presented on behalf of Brown is given from the viewpoint of a case that is on collateral review, which his is

not. *Id.* Furthermore, the argument on this issue does not include citation to case law handed down by this Court addressing the issue raised that pre-dated the filing of his appellate brief. It is sadly obvious that counsel for Brown cut and pasted the argument presented on Brown's behalf from a brief of another dissimilarly situated appellant. Based upon our conclusion *infra* that this issue is not waivable, counsel's otherwise fatal mistake does not hamper our ability to grant Brown the relief to which he is entitled.

Both witnesses explained why they did not come forward, namely out of fear of retaliation from Brown. Smith was living with his mother at the time and testified that he did not implicate Brown because of concern for his mother's safety if Brown learned of his cooperation with the police. *Id.* at 139. He also did not want to be labeled a "snitch," because according to Smith, "nothing good" happens to snitches. *Id.* at 144–45. Meggison stated he did not come forward because he "was fearing for [his] life," as he went to school with Brown and did not know what Brown would do to him if he learned that Meggison told the police what happened. *Id.* at 196.

The jury heard all of this information and determined that Smith and Meggison were worthy of belief. The jury apparently chose to accept the witnesses' explanations for the delay in reporting the incident to the police and for their failure initially to cooperate with the police. "This Court cannot substitute its judgment for that of the jury on issues of credibility." *Commonwealth v. DeJesus,* 580 Pa. 303, 311, 860 A.2d 102, 107 (2004). The trial court, which had the benefit of sitting through the trial and observing the witnesses as they testified, determined that the jury's verdict was not contrary to the evidence and did not shock its sense of justice. Based upon the record before us, we find no abuse in the trial court's exercise of discretion in this manner.

■ Next, Brown asserts that the trial court erred by permitting the Commonwealth to introduce into evidence the gun used in the October 6, 2006 robbery and expert testimony about the gun used in the robbery, as there was no evidence to support a finding that it was the same gun used to kill Stepien on September 28,

2006.[4] Brown's Brief at 25–26. The trial court states that this issue is meritless, as the gun introduced at trial was the same caliber as the gun used to kill Stepien and the test bullet shot from the gun showed the same class characteristics as those observed on the bullet recovered from Stepien's head. Trial Court Opinion, 1/18/13, at 13. We agree.

■ "The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Washington,* 63 A.3d 797, 805 (Pa.Super.2013) (citation omitted). With respect to the admissibility of a firearm that has not been proven to be the weapon used in the commission of the crime in question, our Supreme Court has said:

> A weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence.

*Commonwealth v. Williams,* 537 Pa. 1, 20, 640 A.2d 1251, 1260 (1994) (citation omitted).

The Pennsylvania Rules of Evidence regarding expert testimony state:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

4. Brown does not otherwise challenge the trial court's admission of evidence of his partic-

ipation in the October 6, 2006 robbery.

**(a)** the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

**(b)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

**(c)** the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

The record reflects that the gun used to kill Stepien and the gun used to rob Yesco were both .22 caliber guns. *See* N.T., 2/23/11, at 243. Although the bullet recovered from Stepien's head was damaged, the Commonwealth's firearms expert testified that it had similar characteristics to the test bullet fired from the .22 caliber gun recovered from the robbery perpetrated by Brown: both had six lands and grooves with a right-hand twist, and the gun(s) that shot the bullets marked them both poorly. *Id.* at 246–47.

Brown stipulated to the Commonwealth's firearm expert's qualifications as an expert witness. N.T., 2/23/11, at 238. On appeal, he only argues that her testimony was not such that it would assist the jury in understanding the evidence, as "the testimony that she provided could not shed any real light on the possible likelihood that the murder bullet had been fired from [Brown's] gun utilized in the Yesko [*sic*] robbery[.]" Brown's Brief at 25–26. He further asserts that "her attempt to link [Brown's] gun to the bullet used to kill Mr. Stepien was improper, misleading and highly prejudicial to [Brown] since there was no scientific link between the two bullets[.]" *Id.* at 26. As the case law recited above indicates, a "scientific link" between the gun and the murder bullet is not necessary; rather, the evidence must only tend to prove that Brown had a similar weapon to the one used to murder Stepien.

*See Williams*, 537 Pa. at 20, 640 A.2d at 1260. The testimony provided by the Commonwealth's firearm expert tended to prove that the gun admitted into evidence was similar to the gun used in the murder. Therefore, the admission of the gun and expert testimony comparing the two bullets was proper.

■ As his final issue on appeal, Brown asserts that his sentence of a mandatory term of life in prison without the possibility of parole for second-degree murder violates the Eighth Amendment's ban on cruel and unusual punishment pursuant to *Miller v. Alabama*, as he was sixteen years old when he committed the crime. Brown's Brief at 11. The Commonwealth concedes that Brown must be resentenced on this basis. Commonwealth's Brief at 7–13. The trial court agrees that this claim has possible merit, questioning only Brown's failure to preserve this issue below apart from his inclusion of the same in his amended 1925(b) statement. Trial Court Opinion, 1/18/13, at 15–17.

In posing its question, the trial court relies in part on a footnote in *Commonwealth v. Lofton*, 57 A.3d 1270 (Pa.Super.2012). Therein, this Court raised the question of "whether a claim that a juvenile sentence of life imprisonment without parole violates cruel and unusual punishment under the federal constitution or the cruel punishment provision of the Pennsylvania Constitution presents a legality of sentence claim," which would render the claim unwaivable. *Id.* at 1276 n. 2. Because the defendant in *Lofton* had preserved the issue at the trial level, the Court found it unnecessary to resolve that question. *Id.*

Contrary to the above-referenced *dicta* in *Lofton*, this Court has long held that a claim that a sentence violates an individual's right to be free from cruel and unusual

punishment is a challenge to the legality of the sentence, rendering the claim unwaivable. *Commonwealth v. Howard,* 373 Pa.Super. 246, 540 A.2d 960, 961 (1988) (stating that because "no court may legally impose cruel and unusual punishment [ ...,] [a] contention that the sentence imposed constitutes cruel and unusual punishment is a challenge to the legality of sentence which may be appealed as of right on direct appeal"); *see also Commonwealth v. Yasipour,* 957 A.2d 734, 740 n. 3 (Pa.Super.2008), *appeal denied,* 602 Pa. 658, 980 A.2d 111 (2009) (finding a claim that a sentence is cruel and unusual punishment not to be waived for failing to preserve it below, as it is a challenge to the legality of the sentence). Moreover, in *Commonwealth v. Devon Knox,* 50 A.3d 732 (Pa.Super.2012),[5] this Court, pursuant to *Miller,* vacated a mandatory sentence of life imprisonment without the possibility of parole for second-degree murder committed when the defendant was a juvenile, and we expressly stated that the claim before us was a challenge to the legality of the sentence.[6] *Id.* at 741.

Recently, in *Commonwealth v. Peterson,* —— Pa. ——, 67 A.3d 789 (2013), our Supreme Court implicitly recognized that a challenge to the constitutionality of a mandatory sentence of life in prison without the possibility of parole for a juvenile challenges the legality of the sentence and thus cannot be waived. In *Peterson,* the Supreme Court vacated the judgment of sentence pursuant to *Miller* despite the

fact that the defendant had not raised the claim on direct appeal before the Superior Court, and instead first raised the claim in a supplemental petition for allowance of appeal before the Supreme Court. *See id.; Commonwealth v. Peterson,* 368 WDA 2010, 4, 47 A.3d 1247 (Pa.Super. March 16, 2012) (reciting, verbatim, the issues raised in the defendant's brief on appeal before the Superior Court, which did not include a constitutional challenge to the sentence of life in prison without the possibility of parole for a juvenile).

■■■ The trial court correctly recites the well-settled rule that a new law applies retroactively to a case pending on direct appeal as long as the defendant preserved the issue in the trial court and all subsequent stages, including direct appeal. *Commonwealth v. Smith,* 609 Pa. 605, 640, 17 A.3d 873, 893–94 (2011); *see* Trial Court Opinion, 1/18/13, at 15. As stated above, a claim that a sentence constitutes cruel and unusual punishment raises a question of the legality of the sentence, and legality of sentencing claims *per se* can be raised for the first time on direct appeal. Thus, Brown's failure to raise the issue prior to appeal does not preclude the applicability of *Miller* to this direct appeal case.

■■ It is uncontested that the trial court sentenced Brown to a mandatory term of life in prison without the possibility of parole for second-degree murder that he committed when he was 16 years old. The United States Supreme Court has

---

**5.** This Court decided the *Devon Knox* case five months prior to the *Lofton* decision.

**6.** Contrary to the trial court's belief, Devon Knox, like Brown, did not raise the constitutionality of his mandatory sentence of life in prison without the possibility of parole in post-sentence motions. *See Devon Knox,* 50 A.3d at 737 (indicating that Devon Knox raised a challenge to the weight of the evidence and a claim of ineffective assistance of

trial counsel in his postsentence motions); Trial Court Opinion, 1/18/13, at 16. This was also true for the companion case of Jovon Knox. *See Knox,* 50 A.3d at 753 (stating that Knox filed a post-sentence motion raising only the weight of the evidence). The circumstances presented in both Knox cases are precisely the same as in the case at bar, and in those cases there was no question of *Miller's* applicability.

spoken clearly on this issue: "Mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller,* 132 S.Ct. at 2460; *see also Knox,* 50 A.3d at 769 (holding that "A mandatory sentence of a term of life imprisonment without the possibility of parole for a juvenile offender convicted of second-degree murder is cruel and unusual punishment and a violation of the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution," and setting forth a non-exhaustive list of factors to be considered upon resentencing); *Commonwealth v. Batts,* —— Pa. ——, 66 A.3d 286, 293 (2013) (life sentence without the possibility of parole unconstitutional for first-degree murder committed when the defendant was 14 years old). We therefore agree that we must vacate the judgment of sentence and remand for resentencing pursuant to *Miller* and *Knox.*[7]

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

---

**7.** On October 25, 2012, the Pennsylvania Legislature passed new legislation setting forth the sentence for persons who commit murder, murder of an unborn child and murder of a law enforcement officer prior to the age of 18. 18 Pa.C.S.A. § 1102.1. This statute expressly applies only to defendants convicted after June 24, 2012. *Id.* As the trial court sentenced Brown on May 23, 2011, this statute is inapplicable to the case at bar. *But see Batts,*

66 A.3d at 300 (Baer, J., concurring) ("[F]or purposes of uniformity in sentencing, it would be appropriate for trial courts engaging in the task of resentencing under this circumstance to seek guidance in determining a defendant's sentence and setting a minimum term from the General Assembly's timely recent enactment in response to the U.S. Supreme Court's decision in *Miller.*").