J-S61027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERTO WALKER FRANKS | |
| Appellant | No. 515 WDA 2014 |

Appeal from the Judgment of Sentence of January 30, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0000504-2013

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.: **FILED NOVEMBER 14, 2014**

Roberto Walker Franks appeals from the judgment of sentence entered on January 30, 2014, following a jury trial and conviction of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance ("PWID"); knowingly or intentionally possessing a controlled substance; use of, or possession with intent to use drug paraphernalia; and tampering with or fabricating evidence.[1] We affirm.

The trial court set forth the following recitation of the facts:

On October 18, 2012, at approximately 3:00 o'clock p.m., Jason A. Cox, Chief of the Uniontown City Police Department ("UCPD"), observed [Franks] near the intersection of Morgantown Street

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (16), and (32), and 18 Pa.C.S.A. § 4910(1), respectively.

and Robinson Street, in Uniontown, Fayette County. [Franks] was leaving a hair salon known to the UCPD as a possible haven for drug-related activity. Chief Cox pulled his marked Ford Expedition alongside [Franks], to ask him a few questions. While speaking with [Franks], Chief Cox noticed that [Franks] seemed nervous and evasive. [Franks] also would not make eye contact and his hands were fidgeting near his waist.

Chief Cox decided to radio for backup, and exited his vehicle to continue speaking with [Franks]. A short time later, Officer Jamie Holland, also of the UCPD, arrived on the scene.

Officer Holland immediately noticed [Franks] removing his hand from his pocket and making a throwing motion behind his back. This caused Officer Holland to move quickly in that direction, directly behind [Franks], to an area with some shrubbery, where he retrieved a tied-off corner piece of a plastic sandwich bag, with a white substance inside. That substance was later confirmed to be 2.8 grams of cocaine.

[Franks] was placed under arrest and searched at that time. The search revealed $300.00 in cash, a digital scale, and a plastic sandwich baggie with one of the bottom corners missing.

Officer Holland was also recognized by the [c]ourt as an expert in the field of narcotics investigation. He provided additional expert testimony concerning the indicia of [Franks'] intent to deliver the cocaine to another person. In particular: (1) the scale seized from [Franks] was capable of measuring minute weights, down to one-tenth of a gram, which is the measurement system typically used in the sale of cocaine; (2) the plastic sandwich bag, with one missing corner, is a half-used version of what police often refer to as a "diaper," which is the byproduct of the packaging of cocaine for distribution; (3) the amount of cocaine is of a size typically purchased and broken down to sell for a profit; and (4) Officer Holland had never seen a mere user of drugs in possession of $300, a digital scale, that quantity of cocaine, and a baggie with a corner missing. It was thus his expert opinion that these items indicated [Franks'] intention to distribute the cocaine.

On cross-examination, Officer Holland stated that [Franks] had admitted purchasing the cocaine for his own use, but not to any intention of selling the same. Instead, [Franks] claimed to have just purchased the cocaine at the nearby hair salon. This was

the same salon the UCPD and others suspected of being a distribution area for cocaine.

[Franks] also testified. His recitation of the facts was nearly identical to that presented by the Commonwealth. Importantly, he did not challenge his possession of the cocaine, his attempt to discard it, or that he owned the drug paraphernalia, the scale. Rather, the thrust of his testimony was to undermine the Commonwealth's evidence of his intent to deliver the cocaine to another person.

[Franks] explained the amount of money he was carrying by stating that he was working two jobs, at or in excess of sixty hours per week, as a cook in the South Side of Pittsburgh and a recycler at a local waste facility. Likewise, [Franks] explained that he normally used the scale to weigh spices at his job in Pittsburgh, but had started taking it to buy drugs at the hair salon to ensure he was not being cheated.

As to the baggie corner, [Franks] indicated that was his preferred method of transporting cocaine for personal use. [Franks] also explained his rationale for buying more than a minimal quantity. He explained that, when a user purchases three grams of cocaine, they "usually get one free." [Franks] elaborated, "That's the way it is, the way it's been since I been dealing, like, getting it." . . .

On cross-examination, [Franks] restated that his employer provided the scale, but avoided the question of documentation or other evidence to substantiate that claim. He also provided testimony in contradiction with Officer Holland. While Officer Holland noted that drug dealers would normally use both corners of a plastic baggie before discarding it, [Franks] asserted that the drug dealer he purchased from gave him the entire baggie. [Franks] could not explain why he retained the baggie instead of throwing it away after knotting off the corner.

Trial Court Opinion ("T.C.O."), 5/16/2014, at 2-5 (record citations omitted).

A jury convicted Franks of the above-mentioned counts on January 8, 2014, and on January 21, 2014, the court sentenced him to not less than eighteen months nor more than four years' incarceration. Franks filed post-

sentence motions on January 31, 2014, which the trial court denied on February 24, 2014. On March 5, 2014, Franks timely appealed to this Court, and on the same day, filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court entered an opinion pursuant to Pa.R.A.P. 1925(a) on May 16, 2014.

Franks raises the following three questions for our review:

1.     Did the Commonwealth fail[] to prove beyond[ a] reasonable doubt that [Franks] possessed the controlled substance with the intent to deliver [it] to another party?

2.     Was there insufficient evidence proffered by the Commonwealth for the jury to [find] that [Franks] possessed the controlled substance with the intent to deliver [it] to another party?

3.     Was there insufficient evidence presented by the Commonwealth to support the charge of possession of a controlled substance with the intent to deliver [it] to another party?

Franks' Brief at 7. In his argument, Franks combines these issues into a single challenge to the sufficiency of the evidence supporting the jury's finding that he possessed the cocaine specifically with the intent to deliver. *Id.* at 8-18. He claims that the testimony was "unreliable and contradictory" and that "[s]imply because the police use one of their own as an expert and to articulate the 'buzz words' for each case does not give rise to intent." *Id.* at 17, 18. We disagree.

When reviewing a sufficiency of the evidence claim, our standard of review is as follows:

We must determine whether, viewing all the evidence at trial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, the jury could have found that each element of the offense was proven beyond a reasonable doubt. Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of the evidence.

***Commonwealth v. Bull***, 618 A.2d 1019, 1020 (Pa. Super. 1993) (quotation omitted).

In order to prove the offense of possession with intent to deliver a controlled substance, the Commonwealth must prove beyond a reasonable doubt both that the defendant possessed the controlled substance and had the intent to deliver. When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash. Expert opinion testimony is also admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use. The expert testimony of a witness qualified in the field of drug distribution, coupled with the presence of drug paraphernalia, is sufficient to establish intent to deliver.

***Commonwealth v. Carpenter***, 955 A.2d 411, 414 (Pa. Super. 2008) (citations and quotation marks omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the quantity of drugs and the presence of packing materials and paraphernalia, in addition to the expert testimony of Officer Holland, which the jury found credible, established intent to deliver beyond a reasonable doubt.

At trial, Officer Holland, an officer with eight years on the force and a member of the Fayette County Drug Task Force, was admitted without objection as an expert in the field of narcotics investigation. N.T. Trial, 1/06/2014, at 27.

Officer Holland testified that Franks possessed the cocaine with intent to deliver because Officer Holland watched Franks discard a baggie that contained 2.8 grams of cocaine, and Franks possessed a digital scale, $300.00 in cash, and a clear plastic baggie with one of the corners missing. *Id.* at 31-32, 36, 39. Officer Holland testified that the digital scale was capable of measuring to one tenth of a gram, a unit of measurement used to distribute drugs, and that such a scale would typically be found with someone who is packaging narcotics. *Id.* at 36, 41. He further testified that 2.8 grams of powder cocaine, such as Franks was seen to discard, was worth approximately $300.00 in the Uniontown area. *Id.* at 40. Although he noted that some users do buy in bulk, they usually possess less than a gram, and he had never seen a user who had "$300.00 worth of cocaine on his person, a digital scale, and a baggie with a corner missing." *Id.* at 43. Furthermore, Officer Holland stated that street dealers typically package drugs for sale by placing them in a corner of a plastic baggie and tying it off, and that he would expect the dealer to remain in possession of the baggie, whereas a user would only possess the corner. *Id.* at 38-39, 41-42.

In **Bull**, *supra*, we also found the evidence sufficient to constitute intent to deliver. There, the defendant had packaging materials, such as

plastic bags, and the expert witness, qualified in the field of drug distribution and investigation, stated that the amount possessed by the defendant was more than an individual user would have. *Bull*, 618 A.2d at 1021. Here, similarly, we conclude that there was sufficient evidence to support the PWID conviction where "[t]he testimony and the drug paraphernalia taken together established intent to deliver." *Carpenter*, 955 A.2d at 415. Franks' argument that the Commonwealth failed to prove intent to deliver lacks merit.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2014

---

[2] To the extent that Franks makes a passing reference to "unreliable and contradictory" testimony, Franks' Brief at 17, we observe that this claim is waived for failure to identify the alleged contradictory witness testimony. *Id.* at 17-18. Even if he had developed this claim, we would deem it an unpreserved challenge to the weight of the evidence; moreover, "[t]his Court cannot substitute its judgment for that of the jury on issues of credibility." *Commonwealth v. Brown*, 71 A.3d 1009, 1014 (Pa. Super. 2013) (citation omitted). Thus, it would not merit relief.