J-S55035-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LESLIE L. BROWN, | : | |
| | : | |
| Appellant | : | No.  535 WDA 2015 |

Appeal from the Judgment of Sentence Entered November 19, 2014,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0008030-2009

BEFORE:    FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 28, 2015**

Leslie L. Brown (Appellant) appeals from a judgment of sentence entered in connection with his conviction for, *inter alia*, second-degree murder.  We affirm.

This Court previously summarized the background underlying this matter as follows.

> At approximately 12:00 a.m. on the morning of September 29, 2006, 16-year-old [Appellant] was in the Swissvale neighborhood of Allegheny County with friends Lamar Meggison ("Meggison"), Keith Smith ("Smith"), and Daniel Holmes.  As the group proceeded to a local convenience store, [Appellant] approached Michael Stepien ("Stepien" or "the victim"), who was walking in a nearby alley, and demanded money, holding a gun to Stepien's head.  Stepien told [Appellant] he had no money. [Appellant] fired two warning shots—one in the air and one into the ground—and demanded money a second time.  When Stepien again told him he did not have any money, [Appellant] shot him in the head.  [Appellant] and his friends, who were still in the area, ran to the home of Terico Ross, another friend who

---

*Retired Senior Judge assigned to the Superior Court.

lived in the neighborhood. While there, in the presence of his friends, [Appellant] said that he killed someone.

Paramedics responded to a call of a man lying in the alley between Nied's Funeral Home and the volunteer fire department and transported the victim to the hospital. Stepien was pronounced dead from the gunshot wound to his head at approximately 3:00 a.m. on September 29, 2006. Medical personnel removed a badly damaged .22 caliber bullet from Stepien's head.

On October 6, 2006, at a bus stop in Swissvale several blocks from where the murder occurred, [Appellant] approached Francis Yesco ("Yesco") from behind, put a gun to his head, told him not to move, and reached into Yesco's pants pocket. Yesco brushed [Appellant's] hand away and turned to strike [Appellant], at which [time Appellant] fled, still holding the gun. Yesco and Swissvale Police Officer Justin Keenan, who was patrolling in the area and observed what happened, chased [Appellant] for approximately half a block, during which [Appellant] discarded the firearm over a fence. Officer Keenan ultimately caught [Appellant] and arrested him, and recovered the gun shortly thereafter.

A ballistics expert for the Commonwealth test-fired [Appellant's] gun, a .22 caliber revolver, and compared the test bullet with the bullet removed from the victim. The bullet recovered from Stepien's head was so badly damaged it could not be matched, but because it shared certain similarities with the test bullet, [Appellant's] gun could not be excluded as the murder weapon.

The police had no further evidence linking [Appellant] to Stepien's murder until 2008, when they arrested Carl Smith, Smith's brother, who told police that Smith was present at the time [Appellant] shot Stepien. This led police to interview other witnesses, who also implicated [Appellant] in Stepien's murder. A grand jury was subsequently convened, and ultimately [Appellant] was arrested.

The Commonwealth charged [Appellant] by information with criminal homicide, robbery, carrying a firearm without a license, and possession of a firearm by a minor. Following a

- 2 -

three-day trial, a jury convicted [Appellant] of second-degree murder, robbery, carrying a firearm without a license, and possession of a firearm by a minor. On May 23, 2011, the trial court sentenced [Appellant] to a mandatory term of life in prison without the possibility of parole for second-degree murder and to a consecutive term of three to six years of imprisonment for carrying a firearm without a license. The court imposed no further penalty on the remaining convictions.

Following sentencing, the trial court granted trial counsel's motion to withdraw. The trial court did not appoint new counsel until July 14, 2011. On September 30, 2011, [Appellant] filed a counseled petition pursuant to the Post Conviction Relief Act seeking reinstatement of his post-sentence rights. The trial court granted his request on December 1, 2011, ordering the filing of post-sentence motions *nunc pro tunc* within 10 days of its order. [Appellant] complied on December 7, 2011, raising a challenge to the weight of the evidence and two claims of trial court error. On January 20, 2012, the trial court granted [Appellant] permission to file amended post-sentence motions, which [Appellant] did on March 30, 2012, raising an additional claim of trial court error. On May 16, 2012, [Appellant's] post-sentence motions were denied by operation of law. [Appellant timely filed a notice of appeal.]

***Commonwealth v. Brown***, 71 A.3d 1009, 1011-12 (Pa. Super. 2013) (footnotes omitted).

On appeal, Appellant raised a challenge to the weight of the evidence, presented an evidentiary issue, and claimed that his sentence was illegal pursuant to ***Miller v. Alabama***, 132 S.Ct. 2455 (2012), which holds that "[m]andatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." ***Brown***, 71 A.3d at 1017 (citation and quotation marks omitted). This Court rejected Appellant's challenge to the weight of

the evidence and his evidentiary issue. However, the Court agreed with Appellant that *Miller* rendered illegal his mandatory sentence of life without the possibility of parole. Consequently, this Court vacated Appellant's judgment of sentence and remanded for resentencing.[1] Appellant subsequently sought, but was denied, review in our Supreme Court. *Commonwealth v. Brown*, 77 A.3d 635 (Pa. 2013).

The trial court held a sentencing hearing on November 19, 2014. At the conclusion of the hearing, the court sentenced Appellant to 40 years to life in prison for the murder conviction and to a consecutive sentence of three to six years of prison for carrying a firearm without a license. The court imposed no further sentences on the remaining convictions.

Appellant timely filed a post-sentence motion, which the trial court denied. Appellant timely filed a notice of appeal and an unsolicited Pa.R.A.P.

---

[1] As this Court noted in *Brown*,

> the Pennsylvania Legislature passed new legislation setting forth the sentence for persons who commit murder, murder of an unborn child and murder of a law enforcement officer prior to the age of 18. 18 Pa.C.S.A. § 1102.1. This statute expressly applies only to defendants convicted after June 24, 2012. *Id.* As the trial court sentenced [Appellant] on May 23, 2011, this statute is inapplicable to the case at bar.

*Brown*, 71 A.3d at 1017 n.7 (citation omitted). Consequently, this Court directed the trial court to sentence Appellant pursuant to *Miller* and *Commonwealth v. Knox*, 50 A.3d 749 (Pa. Super. 2012). *Brown*, 71 A.3d at 1017.

1925(b) statement. The trial court subsequently issued an opinion consistent with Pa.R.A.P. 1925(a).

In his brief to this Court, Appellant asks us to consider one question, namely,

> Did the trial court err in denying Appellant's post-sentencing motions since Appellant's murder 2 sentence of 40 years to life imprisonment, and the imposition of a consecutive sentence for VUFA, resulting in an aggregate sentence of 43 years to life imp[]risonment, were both manifestly excessive since Appellant showed remorse for his crimes, he was taking steps to rehabilitate himself and demonstrated that he was a changed person, and it is unreasonable to believe that it will take another 37.4 years for Appellant to reach the point at which he can return to and become a productive and positive member of society?

Appellant's Brief at 3 (unnecessary capitalization omitted). Appellant challenges the discretionary aspects of his sentence.

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Appellant timely filed a notice of appeal; he preserved his issue in his post-sentence motion; and his brief contains a Pa.R.A.P. 2119(f) statement. Thus, we must determine whether Appellant has raised a substantial question worthy of appellate review.

> The determination of whether a substantial question exists must be made on a case-by-case basis. It is only where an aggrieved party can articulate clear reasons why the sentence issued by the trial court compromises the sentencing scheme as a whole that we will find a substantial question and review the decision of the trial court. This [C]ourt has been inclined to find that a substantial question exists where the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms underlying the sentencing process.
>
> Also, a bald allegation that a sentence is excessive does not raise a substantial question.

*Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002) (citations omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant asserts that the trial court could have sentenced him to a minimum of 30 years in prison and could have run his sentences concurrently rather than consecutively. Appellant believes he was entitled to a lesser sentence because he expressed remorse for his crimes and because he has taken steps to rehabilitate himself while incarcerated. Lastly, Appellant speculates that "it is unreasonable to believe that it will take another 37.40 years for [Appellant] to reach the point in his development and life at which he could

return to and become a productive and contributing member of our society." Appellant's Brief at 13.

Appellant fails to explain how these factors, for lack of a better word, render his sentence inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. Indeed, a close scrutiny of Appellant's issue and Pa.R.A.P. 2119(f) statement reveals that his sentencing challenge amounts to little more than a bald allegation that his sentence was excessive.

A review of the sentencing transcript makes clear that the trial court was aware of its sentencing options. Moreover, the court knew Appellant's age and heard his testimony expressing his regrets regarding the murder and his attempts at rehabilitation. To the extent that these "factors" constitute "mitigating factors" and that Appellant believes the court failed to consider them adequately, he fails to raise a substantial question. *Disalvo*, 70 A.3d at 903 ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.") (citation and quotation marks omitted).

To the extent that Appellant is claiming that the consecutive nature of his murder and his firearms sentences renders his aggregate sentence excessive, we observe the following.

Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. In fact, this Court has recognized the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. That is[,] in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case.

*Commonwealth v. Austin*, 66 A.3d 798, 808-09 (Pa. Super. 2013) (citations and quotation marks omitted).

Here, Appellant was sentenced to serve an aggregate sentence of 43 years to life in prison for shooting Michael Stepien in the head with a gun he illegally possessed after Mr. Stepien could not produce money at Appellant's gun-point demands. Given the extreme nature of Appellant's criminal conduct, we cannot conclude that the consecutive nature of Appellant's sentences raises his aggregate sentence to a facially-excessive level.

Appellant has failed to present this Court with a substantial question worthy of appellate review. Thus, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: <u>9/28/2015</u>