J-A14027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| KAZAIR GIST | |
| Appellant | No. 1370 EDA 2014 |

Appeal from the Judgment of Sentence December 16, 2013
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003596-2012

BEFORE:  BENDER, P.J.E., BOWES AND SHOGAN, JJ.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 25, 2017**

Kazair Gist appeals from the judgment of sentence of fifty-two to one-hundred-and-four years imprisonment that the court imposed after Appellant's conviction for criminal homicide, robbery, conspiracy to commit robbery, burglary, conspiracy to commit burglary, and possession of an instrument of crime.  We affirm.

The pertinent facts are as follows.  On December 28, 2011, Appellant, Jermaine Jackson, Breon Powell, Tatyana Henderson, and Danasia Bakr traveled from Trenton, New Jersey to Levittown, Bucks County, in order to rob Daniel DeGennaro at gunpoint.  While casing Mr. DeGennaro's residence, Ms. Henderson placed a call to a phone number listed on a sign advertising the sale of a used-car which was parked in the rear of Mr. DeGennaro's

home. Unbeknownst to the group, Mr. DeGennaro allowed a neighbor to park the car in his back driveway. Ms. Henderson made contact with Mr. DeGennaro's neighbor, Nicholas Miller, and feigned interest in the car.

Shortly thereafter, Appellant, Mr. Jackson, and Mr. Powell entered Mr. DeGennaro's home. Ms. Henderson operated as a look-out, and Ms. Bakr remained in the car. The three men entered Mr. DeGennaro's residence armed with a shotgun and a nine millimeter handgun, and intended to recover money that the victim purportedly owed to Mr. Jackson. During a scuffle, the conspirators fired two shots at Mr. DeGennaro, striking him once. Mr. DeGennaro perished from the gunshot. The three men fled from the scene, met with the women, and returned to New Jersey.

An investigation ensued. Mr. Miller reported to police that he received a strange phone call regarding the used vehicle parked in Mr. DeGennaro's backyard shortly before his death. Investigating officers reviewed phone records and call logs and established that Ms. Henderson had placed the call to Mr. Miller from an area within 300 yards of Mr. DeGennaro's house. A review of Ms. Henderson's phone records also indicated that she had communicated with Ms. Bakr and Mr. Jackson around the time of the incident. Further investigation placed those phones, as well as Mr. Powell's and Appellant's phone, in close vicinity to Mr. DeGennaro's home at the time in question. Eventually, the police utilized wiretaps to monitor the cellular handsets associated with Ms. Henderson, Ms. Bakr, and Mr. Jackson wherein

they recorded evidence of the murder and attempted cover up. Ms. Bakr also made statements to police implicating herself, Ms. Henderson, Mr. Jackson, Mr. Powell, and Appellant, in the shooting death of Mr. DeGennaro.

Appellant was arrested on March 29, 2012. On August 10, 2012, he filed an omnibus pre-trial motion seeking, in part, the suppression of wiretap evidence obtained by the Commonwealth. Following numerous hearings, the trial court denied that motion. After an extended trial, a jury acquitted Appellant at count one of conspiracy to commit criminal homicide, and found him guilty of the aforementioned offenses. On December 16, 2013, the court imposed an aggregate sentence of fifty-two to one-hundred-and-four years incarceration. On December 18, 2013, at the request of both parties, the trial court filed an order amending its sentencing sheet since it erroneously sentenced Appellant at count one, for which he had been acquitted, instead of at count two, as it intended.

Appellant filed a post-sentence motion on December 27, 2013, and following a hearing on April 3, 2014, the court denied that motion. Appellant filed a notice of appeal to this Court, and he complied with the trial court's directive to file a Rule 1925(b) concise statement of errors complained of on appeal. The court filed a Rule 1925(a) opinion, which largely relied upon its reasoning from its opinion filed with the companion case to this appeal, **Commonwealth v. Powell**, 1312 EDA 2014, (Pa.Super. 2017, filed __, 2017). This matter is now ready for our review.

Appellant presents three questions for our consideration:

1.  Did the suppression court err by refusing to suppress the contents of a wiretap investigation, where the Commonwealth conceded that it failed to minimize any text messages, and also failed to minimize between two hundred and three hundred calls, such that the wiretap investigation constituted an impermissible general search under the U.S. and Pennsylvania Constitutions?

2. Did the trial court err by allowing the Commonwealth to introduce evidence that [Appellant] possessed a handgun, where the Commonwealth itself conceded that it had no evidentiary link between the handgun and the crime?

3. Did the trial court err by failing to strike purported "expert" testimony about cell phone tower coverage where the supposed "expert" failed to consider factors that he said were necessary to form an opinion, and where said "expert" failed to testify to a reasonable degree of scientific or engineering certainty?

Appellant's brief at 4.

At the outset, we must determine whether this matter is properly before us. The Commonwealth contends that this matter should be quashed due to Appellant's failure to file a timely post-sentence motion, and by extension, a timely notice of appeal. The Rules of Criminal Procedure require a written post-sentence motion to be filed "no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(a)(1). The filing of a timely post-sentence motion tolls the period in which a party has to file a notice of appeal. Pa.R.Crim.P. 720(a)(2). However, an untimely post-sentence motion does not operate to toll the period to file a timely notice of appeal,

even if the trial court holds a hearing or otherwise takes action on the motion. **See Commonwealth v. Dreves**, 839 A.2d 1122 (Pa.Super. 2003).

Here, the court imposed Appellant's sentence in open court on December 16, 2013. Two days later, on December 18, 2013, the court filed an amended sentencing sheet at the request of both parties, since it had erroneously sentenced Appellant at count one, for which he had been acquitted, and not count two, as it intended. Appellant filed his post-sentence motion on December 27, 2013. Thereafter, the court denied Appellant's post-sentence motion on April 3, 2014, and Appellant filed a notice of appeal to this Court on April 24, 2014.

The Commonwealth argues that Appellant's notice of appeal was untimely filed since he filed his post-sentence motion on December 27, 2013, which was eleven days after his imposition of sentence in open court. Thus, under the Commonwealth's reasoning, Appellant's post-sentence motion was untimely, and he had thirty-days to file a notice of appeal to this court, that is, until January 15, 2014. As Appellant did not file a notice of appeal until April 24, 2014, the Commonwealth concludes that his appeal was patently untimely, and this matter should be quashed.

Appellant counters this argument by alleging that the court imposed his sentence on December 18, 2013, when it filed the amended sentencing sheet. He maintains that his post-sentence motion was therefore timely filed nine days following his imposition of sentence. Thus, he posits that his

subsequent notice of appeal was timely filed within the thirty-day period dictated by Pa.R.Crim.P. 720(a)(2).

Generally, "time commences to run in the sentencing context when sentence is imposed, *i.e.*, from the date sentence is pronounced in open court." ***Commonwealth v. Duffy***, 143 A.3d 940, 942 (Pa.Super. 2016). Here, however, the sentence imposed in open court at count one, on December 16, 2013, was a legal nullity since Appellant had been acquitted of that offense. Simply, the trial court had no power to sentence him at that count. Under these circumstances, Appellant's sentence was imposed on December 18, 2013, when the court filed its amended sentencing sheet correcting its error. As such, we find that Appellant's post-sentence motion was timely filed, and thus this matter is properly before us.

Turning to the merits of this appeal, we note preliminarily that we disposed of issues nearly identical to Appellant's first and third claimed errors in the companion case to this matter involving Appellant's co-defendant. ***See Powell***, ***supra***, (finding wiretap minimization plan was reasonable, Commonwealth did not materially deviate from minimization plan, and thus, trial court did not err in denying Appellant's motion to suppress; and, finding that trial court did not err in permitting expert

testimony regarding cell phone tower coverage) at *23-39. For the reasons outlined therein, we find that Appellant is not entitled to relief.[1]

Appellant's second issue alleges that the trial court erred in permitting the Commonwealth to offer evidence that a nine millimeter handgun was recovered from Appellant's bedroom during a search of his residence. The admissibility of evidence is a matter left to the sound discretion of the trial court. *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017). We do not disturb evidentiary rulings absent an abuse of that discretion. *Id*. Moreover, we have previously held that "[a] weapon not 'specifically linked' to the crime is generally inadmissible; however, the fact that 'the accused had a weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for the prosecution." *Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) (citation omitted). Further, "[a]ny uncertainty that the weapon is the actual weapon

---

[1] Appellant's claim that the court erred in failing to suppress wiretap evidence gathered against him includes an additional argument that the Commonwealth failed to minimize text messages sent and received by the wiretap targets. Although this particular claim was not directly disposed of in our analysis in the companion case, we do not find Appellant's argument persuasive. From a practical standpoint, it is unclear how a text message could be "minimized," as the contents of such a message are either read or not read by the monitoring officers. In order to determine whether the message is pertinent to the investigation, the message must be read. Appellant offers no argument as to how a text message should or could be minimized for the purposes of the Wiretapping and Electronic Surveillance Control Act, and we cannot fathom a procedure for doing so. Thus, we are not persuaded by Appellant's reasoning in this regard.

used in the crime goes to the weight of the evidence." *Id*. In order to harness the exception, "the prosecution [must] lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." *Id*.

The trial court determined that the nine millimeter handgun was admissible pursuant to the so-called "similar weapon exception." *Christine*, *supra*. The court noted that the firearm was discovered during a search of Appellant's residence, and that the search uncovered other evidence tying Appellant to the handgun and Mr. DeGennaro's murder. It highlighted trial testimony proffered by the Commonwealth's firearm and tool mark expert, John Finor, which discussed a nine millimeter firing cartridge and a bullet slug discovered at the scene of the crime. The court recognized that Mr. Finor was unable to connect the slug or cartridge to the weapon discovered. Nevertheless, it found that the nine millimeter handgun recovered from Appellant's room "might have been used on the night of the murder." Trial Court Opinion, 1/22/16, at 77. Thus, the court held that the handgun was properly admitted into evidence.

Appellant assails the trial court's ruling, arguing that the evidence proffered by the Commonwealth did not justify the inference that the handgun was used in the commission of the crime. He argues that Mr. Finor failed to link either the slug or the cartridge to the gun retrieved from the search of Appellant's residence. Further, he insists that the slug could not

be definitively linked to the nine millimeter cartridge casing. Appellant distinguishes this case from **Commonwealth v. Brown**, 71 A.3d 1009 (Pa.Super. 2013), where we affirmed the admission of a .22 caliber weapon where it was undisputed that the fatal bullet was fired from a .22 caliber gun, and the bullet recovered shared characteristics with a test-bullet fired from the disputed evidence. He asserts that, unlike in **Brown**, Mr. Finor's testimony only created a speculative connection to the firearm recovered from Appellant's room. Finally, Appellant contends that, even if the gun was relevant, its probative value was outweighed by the danger of unfair prejudice since it portrayed Appellant as an individual who "wields firearms." Appellant's brief at 21. As a result of this error, Appellant argues that he should be granted a new trial.

We find that the trial court did not abuse its discretion in permitting the Commonwealth to offer evidence of the nine millimeter handgun discovered in Appellant's bedroom since the Commonwealth laid a sufficient foundation that would justify an inference by the fact-finder that it was used during Mr. DeGennaro's murder. **Christine**, **supra**. Instantly, the Commonwealth proffered evidence that a nine millimeter bullet casing was discovered in proximity to the victim. Further, it offered evidence of a bullet slug which was recovered from a nearby wall. Mr. Finor opined that the projectile fell within the "9 millimeter/38 class," and that it could be fired from a nine millimeter handgun. N.T. Trial, 9/9/13, at 254. Further, he

stated that the cartridge recovered from the crime scene was a nine millimeter firing cartridge, and that it "could have been fired from a variety of different firearms[.]"  N.T. Trial, 9/10/13, at 49.  Nevertheless, Mr. Finor conceded that he could not match the bullet to the cartridge.  *Id*. at 74.

The Commonwealth's evidence of a nine millimeter cartridge in the kitchen and a slug lodged in a nearby wall tended to show that a nine millimeter weapon was employed in the shooting of the victim.  That Mr. Finor could not definitely link these items to each other goes to the weight of the handgun evidence recovered from Appellant's residence, not its admissibility.  *Christine*, *supra*.  Indeed, we recognized this principle in *Brown*, *supra*, noting

> A weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence.

*Brown*, *supra* at 1014 (citing *Commonwealth v. Williams*, 640 A.2d 1251, 1260 (Pa. 1994)).

Insofar as the Commonwealth proffered evidence that a nine millimeter firearm **could** have been used in the commission of the crime, and that evidence was highly probative of Appellant's participation in the crime, the trial court did not abuse its discretion in subsequently permitting

- 10 -

it to offer evidence of the nine millimeter firearm discovered in Appellant's bedroom. Hence, this claim fails.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date:* *9/25/2017*